ST. BERNARD CITIZENS FOR EN-
VIRONMENTAL QUALITY, INC.,
and Louisiana Bucket Brigade

v.

CHALMETTE REFINING, L.L.C.

No. Civ.A. 04–0398.

United States District Court,
E.D. Louisiana.

Nov. 1, 2004.

Adam Babich, Andre Shiromani, John
Pint, Christopher Ralph Brown, Tulane
Environmental Law Clinic, New Orleans,
LA, for Plaintiffs.

Mark John Spansel, Glen Marion Pilie,
Jane C. Raiford, Adams & Reese, New
Orleans, LA, for Defendant.

### *ORDER AND REASONS*

VANCE, District Judge.

Defendant Chalmette Refining, L.L.C.
moves to stay this matter, or in the alter-
native, to continue the hearing on plain-
tiffs' motion for partial summary judg-

ment. Plaintiffs St. Bernard Citizens for Environmental Quality, Inc. and Louisiana Bucket Brigade oppose the motion. For the following reasons, the Court DENIES defendant's motion to stay, but GRANTS defendant's motion to continue the hearing on plaintiffs' motion for summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

On February 12, 2004, and by amended complaint on February 20, 2004, plaintiffs sued Chalmette under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), and the citizen suit provision of the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11046(b)(1). Plaintiffs allege that Chalmette has violated and continues to violate (1) hourly permit emission limits for various harmful pollutants, (2) flare performance standards and monitoring requirements, (3) benzene emission limits for its storage tanks, (4) State reporting requirements for "unauthorized discharges" of pollutants and (5) the EPCRA reporting requirements. Plaintiffs allege that these violations endanger the health and damage the quality of life of their members who live near Chalmette's refinery. Plaintiffs request a declaration that Chalmette has committed these violations, an injunction requiring Chalmette to cease the violations, and civil penalties and attorney's fees.

On May 18, 2004, plaintiffs filed a motion for partial summary judgment on two issues. First, plaintiffs argue that the Court should grant summary judgment on Chalmette's liability for 34 violations of its emissions permits, including eight violations of flare performance standards, 17 unauthorized discharges of oil, and nine unauthorized discharges of pollutants. Defendant's refinery documented these vi-

olations by filing unauthorized discharge reports, as required by the Louisiana Department of Environmental Quality under Louisiana's plan for implementing the Clean Air Act. Plaintiffs argue that the unauthorized discharge reports are indisputable evidence that Chalmette violated its emissions limitations, and thus no genuine issue of material fact exists for trial as to these 34 violations. Second, plaintiffs seek summary judgment on the issue of standing, arguing that members of their organizations have indisputably suffered an injury that is fairly traceable to Chalmette's unauthorized discharges and that is redressable by the Court.

On June 23, 2004, by agreement of the parties, the case was stayed until August 20, 2004 to facilitate settlement negotiations. The case was stayed again twice, with the final stay expiring on September 27, 2004. Chalmette now moves to stay this matter for 180 days, or, in the alternative, to continue the hearing of plaintiffs' motion for partial summary judgment.

## II. DISCUSSION

### A. Motion to Stay

Chalmette argues that the Court should stay this matter for 180 days because the LDEQ has initiated administrative enforcement actions and permit negotiations that are likely to remedy the violations at issue in this lawsuit. Bruce Hammatt, an employee of the LDEQ, states in an affidavit that "[t]he exceedences and violations of state law alleged in [plaintiffs'] Complaint either are covered by or included within the Department of Environmental Quality's enforcement actions against Chalmette Refinery, LLC, and the settlement discussions between the Department and Chalmette." (Def.'s Mem. in Support of Motion for Stay, Ex. A at ¶ 4). Hammatt also indicates that both sides expect a final settlement agreement to be complet-

ed "in the coming weeks." (*Id.*) Chalmette argues that the Court should stay this matter pending resolution of the administrative proceedings because the Court should defer to the LDEQ's expertise, avoid the risk that this lawsuit and the administrative action will result in inconsistent orders, and avoid the possibility that plaintiffs' claims will be mooted by an administrative settlement. Chalmette also argues that Congress provided for citizen suits under the Clean Air Act as a last resort if the state fails to act and that, here, the state is acting to remedy the violations. It is undisputed that the LDEQ has not filed a formal lawsuit or entered into a consent decree with Chalmette. For the following reasons, the Court rejects Chalmette's arguments for a stay.

■ The Court recognizes that it has a "virtually unflagging obligation" to exercise the jurisdiction that it is given. *Case v. Merck & Co.*, No. Civ.A. 02–1779, 2003 WL 145427, at *2 (E.D.La. Jan. 17, 2003) (quoting *Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.2000)). Although the Court has "the inherent power to stay any matter pending before it in the interest of justice and 'economy of time and effort for itself, for counsel and for litigants,'" *Dresser v. The Ohio Hempery, Inc.*, No Civ.A 98–2425, 2004 WL 464895, at *2 (E.D.La. Mar. 8, 2004) (citations omitted), "the moving party bears a heavy burden to show why a stay should be granted." *Case*, 2003 WL 145427, at *2 (quoting *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n. 6 (5th Cir.1985)). The Court concludes that Chalmette has not met its bur-

den, and it will not exercise its discretion to stay this matter.

Defendants seeking stays in factual contexts similar to this one have often relied on the legal doctrine of primary jurisdiction.[1] Perhaps recognizing that courts have consistently rejected these claims, *see Stewart–Sterling One, LLC v. Tricon Global Restaurants, Inc.*, No. Civ.A. 00–477, 2002 WL 1837844, at *5 (E.D.La. Aug. 9, 2002) (collecting cases that reject the claim that a court should stay an environmental citizen suit in deference to an administrative agency), Chalmette is left with arguing that the Court should simply exercise its discretion to stay this matter. Nevertheless, the Court finds that the rationale of the courts that have denied stays requested under the doctrine of primary jurisdiction applies with equal force to the discretionary stay Chalmette requests in this case. Thus, although the Court recognizes that it has "a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice," *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir.1976), the Court will consider the concerns expressed in the primary jurisdiction cases in deciding whether to exercise that power in this case.

■ The courts that have rejected the primary jurisdiction argument rely on the language of the environmental statutes and the policy behind their citizen suit provisions. Environmental statutes, such as the Clean Air Act at issue here, specifically delineate the narrow circumstances in which agency actions may interfere with citizen enforcement. Under the Clean Air Act, a citizen suit is barred only if "the

---

1. Although Chalmette avoids mentioning primary jurisdiction by name, Chalmette's assertion that the Court should stay this matter pending resolution of negotiations with the LDEQ evokes the doctrine's concern with "'promoting proper relationships between

the courts and administrative agencies charged with particular regulatory duties.'" *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 919 (5th Cir.1983) (quoting *United States v. W. Pac. R.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)).

Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(B); *see also Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 795 (5th Cir.2000) (holding that, under the plain language of the Clean Air Act, a citizen suit is precluded only by a lawsuit filed in court, and not by any other administrative action). When, as here, those circumstances are not present, courts have concluded that to delay citizen enforcement would "frustrate Congress's intent, as evidenced by its provisions for citizen suits, to facilitate broad enforcement of environmental-protections laws and regulations." *Sierra Club v. Tri–State Generation and Transmission Ass'n, Inc.*, 173 F.R.D. 275, 284 (D.Colo.1997); *see also Stewart–Sterling One, LLC*, 2002 WL 1837844, at *6; *Sierra Club v. United States Dep't of Energy*, 734 F.Supp. 946, 951–52 (D.Colo.1990). That reasoning applies equally to the discretionary stay Chalmette requests. When Congress enacted the citizen suit provision of the Clean Air Act, it chose to allocate federal judicial resources to the oversight of the nation's air pollution problem. *See Stewart–Sterling One, LLC*, 2002 WL 1837844, at *5. The Court is reluctant to interfere with Congress's allocation of resources by delaying plaintiffs' attempt to enforce those provisions. *Id.* (quoting *Williams v. Alabama Dep't of Transp.*, 119 F.Supp.2d 1249, 1258 (M.D.Ala.2000)). That a stay would impede implementation of the policy behind the citizen suit provision of the Clean Air Act is a factor militating against a discretionary stay.

Chalmette also argues that the Court should stay this matter to avoid the risk that determinations made in this action and in the administrative proceeding will be inconsistent, and to avoid the risk that plaintiffs' case will be mooted by an administrative settlement. These grounds are insufficient to warrant a stay. First, it is far from certain that inconsistent decisions will result if the Court denies a stay. The LDEQ has not issued any orders that might conflict with future Court rulings, and any expectation that the LDEQ will do so is speculation. *See id.* at *6 (finding stay or dismissal of citizen suit unwarranted when the LDEQ had not held hearings or issued orders that might conflict with the court's enforcement of an environmental statute). Chalmette has been negotiating with the LDEQ for approximately four years without reaching a settlement, and there is no way for the Court to predict how much longer the process will take. This action has already been stayed for three months by agreement, but no consent decree has emerged. Furthermore, even if the LDEQ acts to remedy the violations at issue while this citizen suit is pending, Chalmette has not demonstrated how some as yet unformulated order from the LDEQ might conflict with a ruling from this Court. *See Tri–State Generation and Transmission Ass'n, Inc.*, 173 F.R.D. at 284 (finding that court's order that defendant comply with applicable Clean Air Act standards would not conflict with any order from agency that was simultaneously considering those standards). Should the LDEQ issue an administrative order that could impact this proceeding, the Court will address those issues when they arise. *See Sierra Club v. El Paso Gold Mines, Inc.*, 198 F.Supp.2d 1265, 1271 (D.Colo.2002).

Second, Chalmette has not demonstrated that some future order from the LDEQ will definitively moot plaintiffs' enforcement claim. The Fifth Circuit has found that plaintiffs who brought a citizen suit under the Clean Air Act showed that their

injuries were redressable, and therefore not moot, even after the defendant negotiated an administrative consent order that required the defendant to pay civil penalties and to retain experts to recommend additional remedial actions. *Texans United for a Safe Econ. Educ. Fund,* 207 F.3d at 793–94. Because the plaintiffs produced evidence that the remedies in the consent order did not ensure that the defendant would not violate emissions standards in the future, the court found that the plaintiffs could proceed on their claims. *Id.* at 794. Thus, there are circumstances in which plaintiffs may proceed with a citizen suit, even after administrative action has been taken. Chalmette's speculation that a future administrative order might moot plaintiffs' claims is not a sufficient basis for a stay.

Finally, plaintiffs have shown how a stay of this matter will harm them. They have alleged that their members continue to suffer injury to their health and to aesthetic enjoyment of their property as a result of Chalmette's violations. A denial of Chalmette's motion to stay will cause no harm or prejudice to Chalmette. This factor weighs in favor of the Court's decision to refrain from exercising its discretion to stay this matter.

### B. Motion to Continue Hearing on Plaintiffs' Motion for Partial Summary Judgment

In the alternative, Chalmette argues that a continuance of the hearing of plaintiffs' motion for partial summary judgment is justified. Chalmette asserts that, because the parties have focused on settlement, and because plaintiffs ask for summary judgment on Chalmette's liability for 34 separate incidents and on plaintiffs' standing for all 108 incidents, a continuance to allow for discovery on those matters is warranted. Plaintiffs assert

that a continuance is not warranted because Chalmette has not adequately explained how discovery will enable it to rebut plaintiffs' showing on the issues of liability and standing.

The Court finds that a brief continuance is warranted. Chalmette conceded at oral argument that it did not need to conduct discovery on the violations that plaintiffs allege, because the facts relating to those violations are within Chalmette's control. The Court will, however, permit Chalmette a reasonable amount of time to conduct discovery on the issue of plaintiffs' standing.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to stay and GRANTS defendant's motion to continue the hearing on plaintiffs' motion for partial summary judgment. The Court orders plaintiffs' motion for partial summary judgment set for hearing on December 15, 2004. Defendant's opposition to plaintiffs' motion for partial summary judgment is due December 3, 2004, and plaintiffs' reply is due December 8. If defendant wishes to conduct depositions of plaintiffs' affiants, it must do so by November 17, 2004.